

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

KRISTIN HARDY,
CDCR #AA-8633,

Plaintiff,

vs.

A. SILVA, JOHN DOE,

Defendants.

Case No.:  3:24-cv-0899-JAH-MSB

**ORDER DISMISSING FIRST AMENDED PETITION FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)**

## BACKGROUND

Kristin Hardy ("Hardy" or "Plaintiff") is an inmate proceeding *pro se* with a civil action pursuant to 42 U.S.C. § 1983. On November 11, 2024, the Court granted Hardy's request to proceed in forma pauperis ("IFP") but dismissed his original complaint without prejudice for failure to state a claim. ECF No. 6.  The Court granted Plaintiff leave to amend and, after an extension of time, Hardy has now filed a First Amended Complaint ("FAC"). *See* ECF Nos. 6, 9, 10. In his FAC, Hardy alleges his constitutional rights were violated when a parcel containing educational books Hardy had ordered by mail was improperly

1

1  returned to the sender. *See* ECF No. 10. For the reasons discussed below, the Court

2  dismisses the FAC without prejudice for failure to state a claim.

3  **SCREENING PURSUANT TO 28 U.S.C. § 1915(e) AND § 1915A(b)**

4  **A.   Legal Standards**

5  Because Plaintiff is proceeding IFP, the Court must screen the FAC and *sua sponte*

6  dismiss it pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b), to the extent it is

7  frivolous, malicious, fails to state a claim, or seeks damages from defendants who are

8  immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (*en banc*); *Rhodes v.*

9  *Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). "The standard for determining whether

10  Plaintiff has failed to state a claim upon which relief can be granted under §

11  1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for

12  failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule

13  12(b)(6) requires that a complaint to "contain sufficient factual matter . . . to state a claim

14  to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal

15  quotation marks omitted). While detailed factual allegations are not required, "[t]hreadbare

16  recitals of the elements of a cause of action, supported by mere conclusory statements, do

17  not suffice" to state a claim. *Id*. The "mere possibility of misconduct" or "unadorned, the

18  defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility

19  standard. *Id.*

20  "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right

21  secured by the Constitution and laws of the United States, and (2) that the deprivation was

22  committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698

23  F.3d 1128, 1138 (9th Cir. 2012).

24  **B.   Plaintiff's Allegations**

25  Hardy alleges that in February of 2022, he enrolled in paralegal correspondence

26  course provided by "Blackstone." ECF No. 10 at 8. He paid a tuition fee of $825.00 and

27  was to receive books from Blackstone "in shipments of three[,] whenever an exam was

28  completed." *Id.*

1    On March 10, 2023, while Hardy was an inmate at High Desert State Prison, he

2    completed an exam. *Id.* Plaintiff was then transferred to Donovan Correctional Facility

3    ("RJD") on March 13, 2023. *Id.* After Blackstone initially shipped Plaintiff's next round

4    of textbooks to High Desert State Prison, Hardy "received notice" that the books were

5    being "reshipped" to RJD. *Id.* But Hardy subsequently learned the books were "received"

6    at RJD on April 27, 2023, while Hardy was confined to administrative segregation. *Id.*

7    Silva, an RJD "receiving and release" officer, "rejected" the books and had them shipped

8    back to Blackstone. *Id.*

9    California Department of Corrections and Rehabilitation ("CDCR") regulations

10    require that an inmate be provided "notice" when mail is rejected, but Silva did not provide

11    such a notice to Plaintiff. *Id.* at 9. Hardy further alleges Silva should have been aware that

12    inmates are permitted to have correspondence course books, even when confined to

13    administrative segregation. *Id.*

14    In late May of 2023, spoke to "Doe," another officer in "receiving and release," who

15    provided Hardy with a "notice of disapproved books" indicating the books had been

16    returned to sender on May 1, 2023. *Id.* at 9–10. The notice was not forwarded to a facility

17    captain as required under CDCR regulations. *Id.* at 10.

18    **C.    Discussion**

19    Hardy alleges Defendants Silva and Doe violated his First Amendment and Due

20    Process rights when they deprived him of the shipment of books. *Id.* at 10–11. He seeks

21    compensatory and punitive damages. *Id.* at 11.

22    *1.    First Amendment*

23    Hardy alleges Silva and Doe violated his First Amendment rights by returning his

24    package to the sender "due to [his] ad-seg status," despite regulations permitting Hardy to

25    have books. ECF No. 10 at 9. As discussed in this Court's previous screening order,

26    prisoners have "a First Amendment right to send and receive mail." *Witherow v. Paff*, 52

27    F.3d 264, 265 (9th Cir. 1995) (per curium). However, a temporary delay or isolated incident

28    of delay or other mail interference without evidence of improper motive does not violate a

1 prisoner's First Amendment rights. *See Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999)

2 (temporary delay in the delivery of publications did not violate inmate's First Amendment

3 rights); *accord Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) (isolated incidents

4 of mail interference without evidence of improper motive do not give rise to a

5 constitutional violation); *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999) (content-

6 neutral, short-term, and sporadic delays in prisoner's receipt of mail did not violate his First

7 Amendment rights).

8       Here, Hardy raises a single incident of delayed mail.[1] He appears to allege an

9 "improper motive" can be inferred from Silva's failure to follow CDCR regulations

10 regarding timely notification, but without more, this amounts to only negligence. The Court

11 also notes that Hardy admits he received notification that the books had been shipped back

12 to the sender at the end of May, less than 30 days after the parcel was returned. *See* ECF

13 No. 10 at 9. Absent evidence of a "broader plan or course of conduct to censor plaintiff's

14 mail unconstitutionally, an error by prison officials does not justify relief under § 1983."

15 *See Lingo v. Boone*, 402 F. Supp. 768, 773 (C.D. Cal. 1975) (finding prisoner not entitled

16 to monetary relief under § 1983 where prison officials erroneously withheld a single piece

17 of mail on the grounds that it was inflammatory); *Canales v. Guzman*, 2023 WL 5418771,

18 at *4 (S.D. Cal. 2023) (finding allegation of a single incident of negligence in failing to

19 deliver the plaintiff's package insufficient to state a First Amendment claim);" *Watkins v.*

20 *Curry*, 2011 WL 5079532, at *3 (N.D. Cal. 2011) ("[A]n honest error by prison officials

21 [in delivering mail] does not justify relief under § 1983"). Therefore, Hardy has failed to

22 state a First Amendment claim. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *Iqbal*, 556 U.S.

23 at 678.

24       **2.**    ***Due Process***

25       Hardy alleges Defendants violated his right to due process by having his books

26

27

28    [1] Hardy does not allege that he *never* received the books. *See generally*, ECF No. 10; *see also* ECF No. 1 at 2 (stating the books were ultimately reshipped to him).

1    returned to sender without giving him sufficient notice. ECF No. 1 at 2–3. The Due Process

2    Clause of the Fourteenth Amendment protects individuals from state deprivations of life,

3    liberty, or property without due process of law. With respect to a prisoner's property, the

4    Supreme Court has held that "an unauthorized intentional deprivation of property" by a

5    prison official constitutes a violation of due process if a meaningful post-deprivation

6    remedy for the loss is unavailable. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). If,

7    however, a prison official merely acts negligently in losing a prisoner's property, there is

8    no due process violation. *Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("[T]he Due

9    Process Clause is simply not implicated by a negligent act of an official causing unintended

10   loss of or injury to life, liberty, or property.") (emphasis in the original).

11        Here, Hardy's claim that his package of books was improperly returned to the vendor

12   fails to give rise to a cognizable due process claim. As discussed above, Hardy's allegations

13   are insufficient to plausibly allege an "unauthorized intentional" deprivation. *See id.*

14   Furthermore, Hardy does not allege he never received his books. And a mere delay of an

15   inmate's mail without notice to the inmate is not a violation of the Fourteenth Amendment.

16   *Sorrels v. McKee*, 290 F.3d 965, 972 (9th Cir. 2002) ("Only if the failure to provide notice

17   was pursuant to prison policy does this constitute a due process violation actionable under

18   § 1983.").

19        Finally, even if Hardy were permanently deprived of the books, he has an adequate

20   post-deprivation remedy under California law and therefore, he may not pursue a due

21   process claim arising out of the unlawful confiscation of his personal property. *Barnett v.*

22   *Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–895).

23   Accordingly, Hardy has failed to state a due process claim. *See* 28 U.S.C. §§ 1915(e)(2)(B),

24   1915A(b); *Iqbal*, 556 U.S. at 678.

25   **D.    Amendment Would Be Futile**

26        The Court previously provided Hardy with a short and plain statement of his

27   pleading deficiencies, and an opportunity to amend his claims, to no avail. As such, the

28   Court finds granting further leave to amend would be futile. *See Gonzalez v. Planned*

1   *Parenthood*, 759, F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of amendment can, by itself,

2   justify the denial of . . . leave to amend.'"); *Zucco Partners, LLC v. Digimarc Corp.*, 552

3   F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave

4   to amend and has subsequently failed to add the requisite particularity to its claims, [t]he

5   district court's discretion to deny leave to amend is particularly broad." (internal quotation

6   marks omitted)). Thus, the FAC is dismissed without further leave to amend.

### CONCLUSION AND ORDER

8       For above reasons, the Court **DISMISSES** this civil action *sua sponte* without

9   further leave to amend for failure to state a claim upon which § 1983 relief can be granted,

10  pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

11      The Court further **CERTIFIES** that an IFP appeal would not be taken in good faith

12  pursuant to 28 U.S.C. § 1915(a)(3) and **DIRECTS** the Clerk of Court to enter a final

13  judgment of dismissal and close the file.

14      **IT IS SO ORDERED.**

15  Dated:  April 22, 2025

16                             Hon. John A. Houston

17                             United States District Judge